MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY *vs.* DORILUS MORRISON.

February 2, 1877.

Charter of Minneapolis & St. Louis Railway Company—Requisites to Organization.—The plaintiff's charter (Laws 1853, c. 10) fixes its capital stock at $2,000,000, provides that, as soon as $100,000 thereof shall have been sub-

scribed, certain persons shall give notice of a meeting of the stockholders to choose directors, and confers upon the directors the usual general authority to manage the business of the corporation, and, among other things, authorizes them to "receive payment to the subscriptions to the capital stock, at such time, in such proportion not exceeding twenty-five per cent. at any one instalment, under such conditions, as they shall deem fit." *Held,*
1. That these provisions authorize the organization of the corporation upon a stock subscription of $100,000, and also authorize the directors, upon such organization, to proceed with the business of the corporation, and, among other things, to collect instalments of the stock.

Same—Effect of Averment in Complaint that the Company was "Duly" Organized.—2. That the allegation in the complaint in this case, that the plaintiff corporation is duly organized, involves the fact of a stock subscription to at least the requisite amount of $100,000.

Same—Distinction Between Subscriptions Before and those After Organization.—
3. That the mode of subscription provided for in section 4, of plaintiff's charter, as amended by Sp. Laws 1869, *c.* 117, § 2, relates to subscriptions made before organization, and that, as to subscriptions made after organization, the taking of them is left to the corporation, acting through its board of directors.

Same—One Assessment and One Call and Notice may be for Several Instalments, Payable Separately.—Section 6 of plaintiff's charter authorizes the directors to "receive payment to the subscriptions to the capital stock, * * * in such proportion, not exceeding twenty-five per cent. at any one instalment, under such conditions, as they shall deem fit," and makes it their duty, at least thirty days previous to the appointed time of such required payment, to give notice thereof "in some newspaper printed in the territory of Minnesota, and in such other place or places as may be thought advisable." *Held,* 1. That these provisions do not make it necessary that each payment required should be called for separately, or that separate notice should be given of each required payment, or that there should be an interval of thirty days between the appointed times of payment; but that it is competent for the directors, at one time and in one call, to require several instalments to be paid, each at a different future date, and to give one notice of all the required payments.

Same—Publication of Notice of Assessment and Call.—2. That the allegation, in the complaint, that payment of the several instalments called "was duly demanded of defendant, by publication of notice for thirty days in the *Minneapolis Daily Tribune,*" is, as against a demurrer, a sufficient allegation that the proper notice was published in a proper newspaper, and in proper time.

Same—Other Notice Optional.—3. That the giving of the other notice provided for is left to the option of the directors.

The complaint in this action alleges that the plaintiff is duly organized and incorporated under and by virtue of the

act of the territorial legislature of Minnesota, entitled "An act to incorporate the Minnesota Western Railroad Company," approved March 3, 1853, (Laws 1853, c. 10,) and several amendatory acts, viz., Laws 1855, c. 65; Sp. Laws 1869, c. 117; Sp. Laws 1870, c. 57; Sp. Laws 1871, c. 71; that, being so organized and incorporated, the plaintiff, in the year 1869, proposed to build a railroad from the city of Minneapolis, in Hennepin county, in a southwesterly direction, to and beyond the Minnesota river, and to a point at or near a junction with the St. Paul & Sioux City railroad, in this state; that, for the purpose of raising money to build such railroad, the plaintiff proposed to issue certificates of stock to such persons as might subscribe money for the purpose of building such railroad, and pay the same for such certificates, and solicited subscriptions from various persons, including the defendant; that divers persons subscribed for plaintiff's stock, to enable it to build such railroad, and, among others, the defendant, on February 1, 1870, subscribed $10,000 for 100 shares of stock, of the par value of $100 each, and agreed to make payments therefor, from time to time, as the plaintiff's board of directors might require, upon notice thereof, in accordance with the plaintiff's charter and by-laws; that thereafter, by resolution of its board of directors, pursuant to its charter, the plaintiff's name was duly changed to "The Minneapolis & St. Louis Railway Company," of which change due notice was given as required by its charter; that, relying on the agreements of its subscribers, including the defendant, the plaintiff, in 1870 and 1871, constructed the line of railroad before mentioned, being about twenty-eight miles in length, and finished the same in 1871, before the commencement of this action.

The complaint further alleges that, on May 29, 1872, the plaintiff's board of directors levied an assessment of four instalments, of 25 per cent. each, on all unpaid subscriptions to its capital stock, payable, respectively, on July 1, 1872,

July 15, 1872, August 1, 1872, and August 15, 1872, to the plaintiff's treasurer, at the State National Bank at Minneapolis; that, at the time of the levy of such assessment, the defendant had paid nothing on his subscription to said stock, and the whole thereof was unpaid; that payment of such assessment and several instalments was duly demanded of the defendant, by publication of a notice for thirty days, in the *Minneapolis Daily Tribune*, of the amount of such assessment and instalments, and the time when, place where, and person to whom the same were made payable, in accordance with plaintiff's charter and by-laws, and said resolution of its board of directors; that plaintiff has paid no part of said assessment.

The complaint concludes with an averment of plaintiff's readiness to deliver to defendant certificates for the stock subscribed for by him, upon being paid the amount of his subscription, and of a tender of such certificates before suit brought.   Judgment is demanded for $10,000, with interest from August 16, 1872.

A general demurrer to the complaint was overruled by the district court for Hennepin county, *Vanderburgh*, J., presiding, and defendant appealed.

An order overruling a demurrer to a similar complaint was affirmed, on appeal, in *Minneapolis & St. Louis Railway Co.* v. *Bassett*, 20 Minn. 535, the points determined in the following opinion not being then made

*Bradley & Morrison*, for appellant.

*Atwater & Babcock*, for respondent.

BERRY, J.[1]   1. The original charter from which, and acts amendatory, the plaintiff derives its existence and powers, is found in Laws 1853, c. 10.   By section 3 of that act the capital stock of the corporation created is fixed at $2,000,000.   Section 5 provides that, "so soon as said stock, or one hundred thousand dollars thereof, shall have been sub-

----

[1] Cornell, J., having been of counsel, did not sit in this case.

scribed," certain named persons shall give notice of a meeting of the stockholders to choose directors. Subsequent portions of the act confer upon the directors the usual general authority to manage the business of the corporation, and, among other things, they are authorized (§ 6) to "receive payment to the subscriptions to the capital stock at such time, in such proportion, not exceeding twenty-five per cent. at any one instalment, under such conditions, as they shall deem fit, under the penalty of forfeiture of all previous payments thereon, or otherwise." Whatever might have been the case, in the absence of the above provision of section 5, that provision clearly authorizes the organization of the corporation upon a stock subscription of $100,000, and the subsequent provisions of the act as clearly authorize the directors, upon such organization, to proceed with the business of the corporation, and, among other things, to collect instalments of the stock. And as the authority to organize depends upon the fact that stock to the amount of $100,000 has been subscribed, the allegation in the complaint in this case, that the corporation is *duly* organized, involves the fact of such subscription, and is sufficient against a demurrer.

2. Defendant's second point, in substance, is that the railroad which the plaintiff alleges that it undertook to build, and did build, is not the railroad which it was authorized to build. A reference to the map will show that the former is in fact a portion of the latter, which is sufficient. See original charter, Laws 1853, c. 10, § 16.

3. The third point made by defendant is that it does not appear that defendant ever made any legal or valid subscription to the stock of the plaintiff. This point is based upon the fact that the complaint shows that the subscription was not taken under the provisions of section 4 of the charter, as amended by Sp. Laws 1869, c. 117, § 2, which authorized certain persons named to open books for subscriptions to the stock. The mode of subscription provided

for in section 4, as amended, is provided with reference only to subscriptions made before organization. As respects subscriptions taken after organization, like the defendant's subscription in this case, the matter of taking them is left to the corporation, acting through its board of directors. Under this authority the defendant's subscription is to be presumed to have been taken, upon the allegation of the complaint.

4. Section 6 of the original charter authorizes the directors to " receive payment to the subscriptions to the capital stock  *  *  * in such proportion, not exceeding twenty-five per cent. at any one instalment, under such conditions, as they shall deem fit," and makes it their duty, " at least thirty days previous to the appointed time of such required payments," to give notice thereof in a newspaper. This does not, as defendant contends, make it necessary that each payment required should be called for separately, or that separate notice should be given of each required payment, or that there should be an interval of thirty days between the appointed times of payment; for such is not the language of the statute. It was, therefore, competent for the directors—as they did in this case—at one time, and in one call, to require several instalments to be paid, each at a different future date, and to give one notice of all the required payments.

5. By sections 6 and 4 of the original charter the subscribers to stock are to be notified of payments required thereupon, " by giving thirty days' notice in some newspaper printed in the territory of Minnesota, and in such other place or places as may be thought advisable." The complaint alleges that payment of the several instalments called for upon defendant's subscription " was duly demanded of said defendant, by publication of a notice for thirty days in the *Minneapolis Daily Tribune*," etc. As against a demurrer, this is a sufficient allegation that the proper notice was published in a proper newspaper, and in

proper time. The giving of the other notice mentioned is left to the option of the directors.

6. Defendant's remaining point, to wit, "that the complaint shows that the subscription was made before the company had an existence," is a technical objection to an inaccuracy which is amply cured by the general tenor of the complaint.

Order affirmed.